DANIEL J. O'HANLON, State Bar No. 122380
REBECCA R. AKROYD, State Bar No. 267305
ELIZABETH L. LEEPER, State Bar No. 280451
KRONICK, MOSKOVITZ, TIEDEMANN & GIRARD
A Professional Corporation
400 Capitol Mall, 27th Floor
Sacramento, California 95814
Telephone: (916) 321-4500
Facsimile: (916) 321-4555

Attorneys for Plaintiff SAN LUIS & DELTA-MENDOTA WATER AUTHORITY

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAN LUIS & DELTA-MENDOTA WATER AUTHORITY,<br><br>Plaintiff,<br><br>v.<br><br>OFFICE OF THE SOLICITOR, of the U.S. Department of the Interior, HILARY TOMPKINS, as Solicitor, U.S. Department of the Interior;<br><br>Defendants. | Case No.<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF UNDER THE FREEDOM OF INFORMATION ACT** |

Plaintiff San Luis & Delta-Mendota Water Authority ("Authority") alleges as follows:

**I.     INTRODUCTION**

1.      Since August 7, 2013 the Authority has been engaged in litigation against the United States Bureau of Reclamation ("Reclamation") and related agencies and officials regarding flow augmentation releases from the Trinity River Division of the Central Valley Project to increase flows in the lower Klamath River in August and September for the benefit of migrating salmon ("FARs"). In October 2014, this Court ruled that the statutory provision Reclamation had been relying upon to make FARs does not authorize FARs. *San Luis & Delta-Mendota Water Auth. v. Jewell*, 52 F. Supp. 3d 1020 (E.D. Cal. 2014), Case No. 1:13-cv-01232-LJO-GSA  ("*Jewell I*").

2.      On December 23, 2014, the Office of the Solicitor of the United States Department of the Interior publicly released a memorandum opinion, Solicitor's Opinion No. M-37030 ("Opinion"). The Opinion sets forth a reinterpretation of another, related statutory provision, and concludes that FARs are authorized by that other provision.  The Opinion contradicts and supersedes prior agency interpretations that would have precluded reliance on that statutory provision as authority for making FARs.  Since release of the Opinion, Reclamation has expressly and publicly cited to and relied upon the Opinion, both administratively in deciding to make FARs again in 2015, and in defense of litigation in this Court challenging its authority to make FARs in 2015.  The FARs made in 2015, including Reclamation's statutory authority to make FARs, are the subject of a second action filed in this Court, on August 21, 2015, *San Luis & Delta-Mendota Water Authority v. Jewell*, Case No. 1:15-cv-01290-LJO-GSA ("*Jewell II*").

3.      On March 3, 2015, pursuant to the Freedom of Information Act, 5 U.S.C.§ 552 ("FOIA"), the Authority sent a request to the Office of the Solicitor for records related to the Opinion, records which may disclose limitations and weaknesses of the Opinion, as well as other records.  The Office of the Solicitor has acknowledged receipt of the Authority's request for records, but has failed and refused to advise the Authority of its determination whether it will comply.  The Authority has made repeated requests for such a determination, to no avail.  To date, no records have been produced in response to the Authority's request.  A determination and production of records is long overdue under FOIA.  This stonewalling of the Authority's request in violation of FOIA, together with

1  Reclamation's concurrent and ongoing use of and reliance on the Opinion administratively and in the

2  pending *Jewell II* litigation to justify its actions, has unfairly prejudiced and will continue to prejudice

3  the Authority absent relief provided by the Court.

4        4.      The Authority brings this action pursuant to FOIA to compel production of all records

5  responsive to its request.  The Authority asks the Court to enjoin the Office of the Solicitor from

6  withholding the requested records, and to order the production of any agency records improperly

7  withheld from the Authority.  The Authority requests that the Court determine that under all the

8  circumstances, including:  the voluntary disclosure of the Opinion; the tactical and selective release of

9  the Opinion for the purpose of enabling administrative action to make further FARs in 2015 despite

10 the Court's ruling in *Jewell I*; Reclamation's use of and reliance on the Opinion administratively and

11 in defense of the *Jewell II* litigation; and the resulting unfairness to the Authority in the *Jewell II*

12 litigation from partial and incomplete disclosure, any claims of attorney-client privilege, attorney

13 work product protection, deliberative process privilege or other claim of privilege for records relating

14 to the same subject matter as the Opinion have been waived.

15 **II.      JURISDICTION AND VENUE**

16       5.      This Court has jurisdiction pursuant to 5 U.S.C. section 552(a)(4)(B) and 28 U.S.C.

17 sections 1331 and 1346(a)(2).

18       6.      The Authority's principal place of business is in Los Banos, California, within the

19 Eastern District of California.  Venue is proper in this Court under 5 U.S.C. section 552(a)(4)(B) and

20 Rule 120 of the Local Rules of the United States District Court, Eastern District of California.

21 **III.     PARTIES**

22       7.      Plaintiff Authority is a joint powers authority formed pursuant to California

23 Government Code section 6500 *et seq*.  The Authority consists of 28 member public agencies, 26 of

24 which contract with Reclamation for water supply from the Central Valley Project ("CVP").  Water

25 delivered to the Authority's members by the CVP is used within areas of San Joaquin, Stanislaus,

26 Merced, Fresno, Kings, San Benito, and Santa Clara Counties, California.  The Authority is authorized

27 to commence and maintain suits on behalf of its member agencies.

28       8.      Defendant Office of the Solicitor ("Solicitor's Office") is an agency of the United

States, within the Department of the Interior.  Solicitor's Office performs legal work for the United States Department of the Interior.  Solicitor's Office has possession, custody, and control of the records the Authority seeks.

9.      Defendant Hilary Tompkins is the Solicitor of the Department of the Interior ("Solicitor"), and is named herein in her official capacity, for her actions and failures to act in an official capacity, or under color of legal authority.  The Solicitor is the chief general counsel for Interior.

**IV.   SUMMARY OF FACTS GIVING RISE TO CLAIMS**

10.      In 1955, Congress authorized the construction, operation, and maintenance of the Trinity River Division ("TRD") of the CVP for "the principal purpose of increasing the supply of water available for irrigation and other beneficial uses in the Central Valley of California."  Act of August 12, 1955, Pub. L. No. 84-386, 69 Stat. 719 ("1955 Act").

11.      The first proviso in section 2 of the 1955 Act provides "[t]hat the Secretary is authorized and directed to adopt appropriate measures to insure the preservation and propagation of fish and wildlife . . ."  The second proviso in section 2 of the 1955 Act provides that "not less than 50,000 acre-feet shall be released annually from Trinity River Reservoir and made available to Humboldt County and downstream water users."

12.      The TRD stores and regulates water from the Trinity River, in northwestern California. Water is released from Trinity Reservoir to the Trinity River through Trinity Dam and Powerhouse, until it flows to the much smaller Lewiston Reservoir seven miles downstream.  From Lewiston Reservoir, water regulated by the TRD may again be released to the Trinity River through Lewiston Dam, or diverted eastward to the Sacramento River watershed in the Central Valley.  Water released to the Trinity River from Lewiston Dam flows generally westward some 112 river miles until entering the Klamath River.  The Klamath River discharges into the Pacific Ocean approximately 40 river miles downstream of its confluence with the Trinity River.  As used in this complaint, the term "lower Klamath River" means the reach of the Klamath River from its confluence with the Trinity River to the Pacific Ocean.  Alternatively, water in Lewiston Reservoir may be diverted at Lewiston Dam to the Sacramento River watershed through Clear Creek Tunnel, which conveys the water into

Whiskeytown Reservoir.  From there, the water either is transported through the Spring Creek Tunnel and discharged into Keswick Reservoir, located on the Sacramento River downstream from Shasta Reservoir, or is released from Whiskeytown Reservoir to Clear Creek, which flows into the Sacramento River downstream from the Keswick Reservoir.

13.    The TRD's water diversions each year from the Trinity River into the Central Valley watershed are integrated with operations of the Shasta Division of the CVP, to supply water to CVP water service contractors and others, and to generate hydropower.  The water diverted to the Sacramento River watershed is also used to comply with environmental protection and restoration requirements, including water quality in the Sacramento River and Sacramento-San Joaquin Delta, and to supply water to wildlife refuges.  Water that is diverted by the TRD and conveyed to the Central Valley is potentially available for delivery to the Authority's members through CVP facilities, among other uses.  On the other hand, Trinity River water that is released to the Trinity River at Lewiston Dam is irretrievably lost to any further CVP uses, including delivery to the Authority's members.

14.    In August and September 2002, a fish die-off occurred in the lower Klamath River during which approximately 34,000 adult fall-run Chinook salmon and a smaller number of other fish species died.  The fish die-off resulted from infection by two primary pathogens: *Ich* and *Columnaris*. The cause or causes of the fish die-off have not been established, though agencies have hypothesized about possible contributing factors, based on the conditions and circumstances in 2002.

15.    Since 2002, Reclamation has made FARs in August and September of six years: 2003, 2004, 2012, 2013, 2014, and 2015.  The FARs are intended to increase the rate of flow in the lower Klamath River above the rate present in 2002, and have been made from water previously stored in Trinity Reservoir.  The cumulative water cost of the 2012-2015 FARs is approximately 200,000 acre-feet ("AF") of water from storage in the TRD, enough water to serve 400,000 families for an entire year.

16.    As authority for the FARs made up through 2014, Reclamation relied upon the first proviso in section 2 of the 1955 Act.

17.    In *Jewell I* the Authority, together with Westlands Water District, challenged the

1    legality of the 2012 and 2013 FARs.  In October 2014, the Court ruled that the first proviso in section

2    2 of the 1955 Act does "not provide authorization for Federal Defendants to implement the 2013

3    FARs to benefit fish in the lower Klamath."  *Jewell I*, 52 F. Supp. 3d at 1070.

4          18.     On December 23, 2014, two months after the Court's ruling in *Jewell I*, the Solicitor's

5    Office publicly released the Opinion, which responds to Reclamation's "request for a legal

6    interpretation of section 2 of the 1955 Act that established the Trinity River Division (TRD) and the

7    corresponding 1959 contract between the Bureau of Reclamation (Reclamation) and Humboldt

8    County (1959 Contract)."  The Opinion is a public document.  It was intentionally and voluntarily

9    released to the public by the Solicitor's Office, including through publication on the Solicitor's

10   Office's website, at https://solicitor.doi.gov/opinions.html.  A copy of the Opinion is attached hereto

11   as **Exhibit 1**.

12         19.     The Opinion acknowledges the Court's ruling in *Jewell I* that the first proviso in

13   section 2 of the 1955 Act does not authorize FARs.  However, the Opinion concludes that the second

14   proviso in section 2 of the 1955 Act does authorize FARs.  The Opinion contends that "Proviso 2

15   appears to allow any beneficial use contemplated by 'Humboldt County and downstream water users'

16   including diversions for consumptive use, most likely the use envisioned at the time the language was

17   developed."  The Opinion concedes that its interpretation of the second proviso of Section 2 of the

18   1955 Act is different from and contradicts Reclamation's prior and long-standing administrative

19   interpretations.  Reclamation had not relied upon that proviso as authority for any of the FARs made

20   up through 2014.

21         20.     There are indications in the Opinion that the version released to the public on

22   December 23, 2014 was selectively limited in scope compared to prior versions of the Opinion.  For

23   example, the Opinion says Reclamation requested a "legal interpretation" of both section 2 of the

24   1955 Act "and the corresponding 1959 contract between the Bureau of Reclamation (Reclamation)

25   and Humboldt County (1959 Contract)," and the 1959 Contract is included in the subject line of the

26   Opinion, but the version of the Opinion released on December 23, 2014 contains only brief mention

27   and little interpretation of the 1959 Contract.  Further, the Authority is informed and believes, and

28   based thereon alleges, that an earlier version of the Opinion discussed as a key consideration the

requirement that Humboldt County and other downstream users be able to demonstrate they can use the water to be released in accordance with the requirements of California water law.  The version of the Opinion released on December 23, 2014, however, does not include a discussion of those requirements.  The public version of the Opinion recommends only that prior to making any releases under the second proviso of section 2 of the 1955 Act, Reclamation conduct "an appropriate level of analysis" including "any other applicable legal requirements that must be addressed."  Whether the 1959 Contract provides for FARs, and whether the FARs in 2015 for the use of Humboldt County or other downstream water users were consistent the requirements of California water law, is at issue in *Jewell II*.

21.     Prior to release of the Opinion, Reclamation had consistently interpreted the second proviso in section 2 of the 1955 Act as intended to provide water for consumptive uses, not instream flow uses such as the FARs.  Since release of the Opinion, however, Reclamation has  relied upon and cited the Opinion as authority for making FARs pursuant to the second proviso of Section 2 the 1955 Act, including for FARs Reclamation made in 2015 over opposition by the Authority.

22.     On December 31, 2015, one week after public release of the Opinion, Reclamation published a Draft Long-Term Plan for Protecting Late Summer Adult Salmon in the Lower Klamath River.  In that draft plan Reclamation cited and relied upon the Opinion as supporting its authority to make FARs, and to rationalize and justify Reclamation's departure from its past policy and interpretation of its statutory authority.  Reclamation repeated its reliance on the Opinion in an amended version of that draft plan published on April 17, 2015.

23.     Reclamation again cited and relied upon the Opinion in documents prepared as part of its environmental review of FARs in 2015.  Reclamation cited and relied upon the Opinion in its Final Environmental Assessment for 2015 Lower Klamath River Late-Summer Flow Augmentation From Lewiston Dam published August 20, 2015.  The Final Environmental Assessment contends that "this proviso may require a separate release of water as requested by Humboldt County and potentially other downstream users from that already being made for fish restoration purposes under other provisions of the 1955 Act."

24.     In its Finding of No Significant Impact ("FONSI") published August 20, 2015,

1  Reclamation asserts that "[f]ormal opinions of the Solicitor are binding on the Department of the
2  Interior and its bureaus."  An Appendix to the FONSI titled "Discussion of Legal Authority for 2015
3  Late-Summer Trinity Augmentation Flows," cites the Opinion and contends that the second proviso in
4  Section 2 of the 1955 Act authorizes FARs.

5       25.    On August 21, 2015, the Authority and Westlands Water District filed *Jewell II* to
6  challenge the legality of the 2015 FARs.  Among other claims *Jewell II* challenges Reclamation's
7  authority to make the 2015 FARs under the second proviso in section 2 of the 1955 Act.  On the same
8  day, the Authority moved for a temporary restraining order and preliminary injunction against FARs
9  that began August 21, 2015 and are scheduled to continue through September 20, 2015.

10       26.    The Federal Defendants (Secretary Sally Jewell, U.S. Department of the Interior, U.S.
11  Bureau of Reclamation, Commissioner Estevan López, and Regional Director David Murillo) opposed
12  that motion for injunctive relief.  The Federal Defendants' Opposition to Plaintiffs' Motions for
13  Temporary Restraining Order and Preliminary Injunction in *Jewell II* expressly and repeatedly cites
14  and relies on the Opinion as support for the Federal Defendants' interpretation of the 1955 Act as
15  providing authority for the 2015 FARs, and contends that the Court should defer to the Opinion's
16  interpretation of the second proviso of section 2.

17       27.    Under all the circumstances, including the intentional and voluntary disclosure and use
18  of the Opinion for the purpose of justifying the FARs made in 2015, and to defend against claims
19  made in the pending *Jewell II* litigation, and the resulting unfairness to the Authority from the tactical
20  and selective disclosure of the Solicitor's views regarding the subject matter of the Opinion,
21  Defendants have waived any otherwise applicable attorney client privilege, attorney work product
22  protection, deliberative process privilege, or other privilege, for all other records regarding the same
23  subject matter as the Opinion, including prior drafts of the Opinion, other memoranda related to the
24  subject of the Opinion, and any related inter- or intra-agency communications.

25       28.    The Federal Defendants in the *Jewell II* litigation have not yet lodged the
26  administrative record relating to the claims in that action or provided a log of any documents withheld
27  from that record under claim of privilege.

28       29.    On March 3, 2015, the Authority submitted a FOIA request via U.S. mail and

electronic mail ("email") to the Solicitor's Office.  The records requested are germane to the claims and defenses at issue in the *Jewell II* litigation.  Among other records, the request seeks records relating to the Opinion or on the same subject matter as the Opinion.  A copy of the request is attached as **Exhibit 2** to this Complaint.  The Authority's FOIA request was been assigned the designation SOL-2015-00052 by the Solicitor's Office.

30.     On March 4, 2015, the Solicitor's Office responded with an email acknowledging receipt of the Authority's FOIA request.  The email stated:  "Given the subject of your request, we are searching within the Office of the Solicitor.  You can expect to hear from us promptly regarding the outcome of this search."  The email originated from Lance Purvis, FOIA Officer for the Solicitor's Office.

31.     Having heard nothing further from the Solicitor's Office since March 4, 2015, on April 13, 2015, counsel for the Authority left a voice mail with Mr. Purvis, requesting an update on the status of a response to the Authority's FOIA request.

32.     On April 14, 2015, Mr. Purvis returned the Authority's telephone call by leaving a voice mail that indicated that the Solicitor's Office was still working on the request, but provided no other information.  Later that day, counsel for the Authority spoke with Mr. Purvis via telephone.  Mr. Purvis indicated he hoped to provide a response soon, but provided no other information.

33.     On May 21, May 28, June 3, and June 12, 2015, counsel for the Authority contacted Mr. Purvis via voicemail and e-mail to request information regarding the time for a response to the Authority's FOIA request, the cost of a response, and the number of documents included in the response.

34.     On June 15, Mr. Purvis returned the Authority's messages by leaving a voice mail stating that the Solicitor's Office was still working on the request, but  provided no other information.

35.     On June 18, June 30, and July 8, 2015, counsel for the Authority again contacted Mr. Purvis via voicemail and email seeking information such as when the Solicitor's Office would respond to the Authority's FOIA request, the cost of a response, and the number of documents to be produced in response to the request.

36.     On July 9, 2015, Mr. Purvis returned the Authority's messages with a telephone call,

and left a voicemail message.  In his voicemail message Mr. Purvis indicated that responsive records were being analyzed in the Solicitor's Office's Washington D.C. and California offices.  Mr. Purvis provided no other information, such as estimated time for a response to the Authority's FOIA request, the cost of a response, or the scope or number of documents, if any, that would be provided response.

37.     On July 31 and August 18, 2015, counsel for the Authority sent two additional emails to Mr. Purvis, again requesting information regarding the time for a response to the Authority's FOIA request, the cost of a response, or the scope or number of documents, if any, that would be provided response.  As of the date of this Complaint, the Authority has received no response to its July 31 and August 8 inquiries.

38.     As of the date of this Complaint—more than six months after the Authority made its FOIA request—the Solicitor's Office has still not notified  the Authority of its determination whether it will comply with the Authority's request, and the Solicitor's Office has not made any responsive records available to the Authority.

**V.     FIRST CLAIM FOR RELIEF
        (FAILURE TO MAKE A DETERMINATION WHETHER TO COMPLY WITH
        RECORDS REQUEST AND PROVIDE NOTICE THEREOF IN VIOLATION
        OF 5 U.S.C. § 552(a)(6))**

39.     The Authority realleges and incorporates herein by reference the allegations of paragraphs 1 through 38, inclusive, of this Complaint and further alleges:

40.     Both FOIA and Interior's FOIA regulations require the Solicitor's Office to make a "determination" whether to comply with a request for records and to notify the party requesting the records of that determination within 20 business days of receipt of the request under normal circumstances, and within 30 business days of receipt of the request under "unusual circumstances." 5 U.S.C. § 552(a)(6)(A)-(B); 43 C.F.R. §§ 2.16, 2.19.  An agency cannot extend the time limit for a determination and notice beyond 30 days.  5 U.S.C. § 552(a)(6)(B)(i).

41.     The Authority is informed and believes, and based thereon alleges, that the Solicitor's Office has not yet made a determination whether to comply with the Authority's request for records, in violation of FOIA.  Even assuming the Solicitor's Office has made such a determination, the Solicitor's Office has not yet provided the Authority with notice of its determination, in violation of

1    FOIA.

2        42.    To make a determination, it is not sufficient for an agency to express "a future intention

3    to produce non-exempt documents and claim exemptions."  Rather, to make a determination, an

4    agency must at least:  "(i) gather and review the documents; (ii) determine and communicate the scope

5    of the documents it intends to produce and withhold, and the reasons for withholding any documents;

6    and (iii) inform the requester that it can appeal whatever portion of the 'determination' is adverse."

7    *Citizens for Responsibility and Ethics in Washington v. Fed. Election Comm'n (*"*CREW*"*)*, 711 F.3d

8    180, 188 (D.C. Cir. 2013).

9        43.    Defendants have not communicated to the Authority the scope of the documents they

10   intend to produce or withhold, have not provided any reasons to the Authority for withholding any

11   documents, and have not informed the Authority that there is any adverse determination that it can

12   administratively appeal.

13       44.    Defendants have unlawfully delayed their determination and notice to the Authority

14   regarding whether they will comply with the Authority's FOIA request for records.

15       45.    The Authority is excused from pursuing an administrative appeal before filing this

16   action.  Because Defendants have not "ma[d]e a determination within the relevant statutory time

17   period" or notified the Authority of that determination, the Authority "may file suit without exhausting

18   administrative appeal remedies."  *CREW*, 711 F.3d at 185; *see* 5 U.S.C. § 552(a)(6)(C)(i) ("Any

19   person making a request to any agency . . . shall be deemed to have exhausted his administrative

20   remedies . . . if the agency fails to comply with the applicable time limit provisions of [§ 552(a)(6)].");

21   *see also Anderson v. U.S. Postal Service*, 7 F. Supp. 2d 583, 586 (E.D. Pa. 1998) (plaintiff was not

22   required to administratively appeal before challenging agency failure to provide any documents where

23   agency had not made the required determination).

24       46.    WHEREFORE, the Authority prays for an order compelling Defendants to make a

25   determination, and to notify the Authority of that determination, promptly and by a date certain, as

26   more fully set forth below.

27   ///

28   ///

## VI.    SECOND CLAIM FOR RELIEF
### (FAILURE TO PROMPTLY MAKE RECORDS AVAILABLE IN VIOLATION OF 5 U.S.C. § 552(a)(3)(A))

47.    The Authority realleges and incorporates herein by reference the allegations of paragraphs 1 through 46, inclusive, of this Complaint and further alleges:

48.    Defendants are unlawfully withholding responsive records from the Authority in violation of FOIA.

49.    Defendants are required to "make the requested records promptly available" to the Authority, 5 U.S.C. § 552(a)(3)(A), and to "exercise due diligence" in responding to the Authority's request, 5 U.S.C. § 552(a)(6)(C)(i), (D)(iii).

50.    Defendants have not promptly produced the requested records,  nor have they exercised due diligence in responding to the Authority's requests.  In the more than six months since the Authority filed its original requests, Defendants have not produced even a single document.

51.    Because Defendants have not made a determination and notified the Authority of the determination within the statutory time limit, the Authority is deemed to have exhausted its administrative remedies regarding the Defendants failure to promptly produce requested records.  5 U.S.C. § 552(a)(6)(C)(i); *see CREW*, 711 F.3d at 185.

52.    In response to Defendants' violations of FOIA, the Court should exercise "jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant."  5 U.S.C. § 552(a)(4)(B).  The Court should "determine the matter de novo" and "examine the contents of such agency records in camera to determine whether such records or any part thereof shall be withheld under any of the exemptions set forth in subsection (b) of this section . . ."  *Id*.  The Court should "supervise the agency's ongoing progress, ensuring that the agency continues to exercise due diligence in processing the request."  *CREW*, 711 F.3d at 189 (citing 5 U.S.C. § 552(a)(6)(C)).

53.    The Court should find that, under all the circumstances, and resulting unfairness to the Authority in its prosecution of the *Jewell II* action, Defendants have waived any claims of privilege or work product protection for any records on the same subject matter as the Opinion.

54.    WHEREFORE, the Authority prays for an order compelling production of responsive

1   records, by a date certain, as more fully set forth below.

2   **VII.   PRAYER FOR RELIEF**

3   WHEREFORE, the Authority prays for relief and judgment as follows:

4   1.   For an order declaring that Defendants have violated the FOIA's statutory timelines for
5   making a determination whether to comply with the Authority's request for records and notifying the
6   Authority of that determination;

7   2.   For an order declaring that Defendants have wrongfully withheld the requested records
8   from the Authority;

9   3.   For an order enjoining Defendants from continuing to delay their determinations
10   regarding the Authority's request for records, and to make a determination and notify the Authority of
11   that determination promptly and by a date certain;

12   4.   For an order enjoining Defendants from continuing to withhold any and all non-exempt
13   records responsive to the Authority's request for records;

14   5.   For an order directing the Solicitor's Office to conduct and complete a search for any
15   and all records responsive to the Authority's FOIA requests and to demonstrate that the Solicitor's
16   Office's search methods are reasonably likely to lead to the discovery of responsive records;

17   6.   For an order directing Defendants to produce, promptly and by a date certain, all
18   records responsive to the Authority's FOIA requests and a *Vaughn* index of any responsive records
19   withheld under claim of exemption, and for the Court's in camera review of all records withheld under
20   claim of exemption, in time so that pertinent records may be included in the administrative record and
21   otherwise considered in the Court's review of the claims in *Jewell II*;

22   7.   For a determination that under all the circumstances Defendants have waived any
23   otherwise applicable privilege or attorney work product protection for records regarding the same
24   subject matter as the Opinion, including prior drafts of the Opinion, other memoranda related to the
25   subject of the Opinion, and any related inter- or intra-agency communications, and an order directing
26   Defendants to produce such records in time so that pertinent records may be included in the
27   administrative record and otherwise considered in the Court's review of the claims in *Jewell II*;

28   8.   For the Court to maintain jurisdiction over this action until Defendants comply with

1   FOIA and all orders of this Court;

2       9.     For an award of its costs of suit, including reasonable attorneys' fees pursuant to 5

3   U.S.C. § 552(a)(4)(E); and

4       10.    For such other and further relief as the Court may deem just and proper.

5   Dated:  September 17, 2015        KRONICK, MOSKOVITZ, TIEDEMANN & GIRARD
                      A Professional Corporation

8                    By:   */s/ Daniel J. O'Hanlon*
                      Daniel J. O'Hanlon

9                      Attorneys for Plaintiff
                      SAN LUIS & DELTA-MENDOTA WATER

10                    AUTHORITY